The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

JULIE A. SU, Acting Secretary of Labor,
United States Department of Labor,

              Petitioner,

v.

STARBUCKS CORPORATION,

              Respondent.

Case No. 2:23-mc-00045-MJP

**RESPONDENT'S OPPOSITION TO AND MOTION TO QUASH PETITIONER'S SUBPOENA *DUCES TECUM,* AND FOR PROTECTIVE ORDER**

**NOTED ON MOTION CALENDAR: AUGUST 18, 2023**

## I.    PRELIMINARY STATEMENT

Respondent Starbucks Corporation ("Starbucks" or the "Company") hereby opposes the Petition to Enforce Subpoena and moves for an order quashing the March 8, 2023, Subpoena *Duces Tecum* (the "Subpoena"), issued by the U.S. Department of Labor (the "DOL"), Office of Labor-Management Standards (the "OLMS"). The Subpoena purports to investigate whether Starbucks is complying with the reporting requirements of § 203(a) of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. 433(a) (the "LMRDA"). That provision calls for employers to report certain types of expenditures for the purpose of persuading employees in union organizing campaigns and/or interfering with employee rights.

But for many decades OLMS has consistently recognized that § 203(a) does not require any reporting by an employer of compensation paid to itself as an employer, or to regular officers,

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1   supervisors and other employees for their services, which Congress expressly exempted from

2   disclosure pursuant to § 203(e) of the Act. In accordance with the plain language of the Act, OLMS

3   has previously recognized that employers (including officers, supervisors, or other employees of an

4   employer) are *not* required to file any reports detailing compensation for services rendered by such

5   regular officers and supervisory employees of the employer.

6        By seeking to compel Starbucks to disclose its payments in the form of bonuses and travel

7   expenses to individual officials and supervisors, and other related information, the challenged

8   Subpoena effects a previously unannounced and unjustified change in OLMS policy. The new policy

9   of investigating and compelling disclosure of payments to corporate officials and supervisors, being

10  applied retroactively, violates the Administrative Procedure Act (the "APA"), the First Amendment,

11  and the LMRDA. Because of these violations of law, the Subpoena fails the Supreme Court's

12  established test for enforcement of administrative subpoenas, under which enforcement of such

13  subpoenas must be denied where: (1) the investigation is not for a lawfully authorized purpose; (2)

14  the subpoena authority at issue is not within the power of Congress to command; (3) the documents

15  sought are not relevant to a lawful inquiry; and/or (4) the information request is not reasonable.

16  *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186 (1946).

17       Even if these tests were satisfied, which they are not in this case, the Subpoena must be

18  quashed or denied enforcement because it lacks statutory authorization and is overbroad, under the

19  Ninth Circuit's holding in *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988) (quashing

20  administrative subpoena for lack of statutory authorization and overbreadth, where the court could

21  "find no reported decision" where agency had issued a similar administrative subpoena). Because

22  the Subpoena fails these tests, it should be quashed, and the Court should issue a protective order to

23  prevent OLMS from seeking to compel the same or similar disclosures, absent compliance with the

24  APA, the LMRDA, and the First Amendment.  Finally, because the Acting Secretary of Labor lacks

25  constitutional authority to serve in her present position without Senate confirmation, she lacks

26  authority to petition to enforce the unlawful Subpoena.

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 2
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

## II.   STATEMENT OF FACTS

### A.   The Parties and Events Leading up to This Proceeding.

Starbucks operates over 9,000 retail locations across the United States to connect communities, one cup of coffee at a time. In August 2021, some of the Company's employees in Buffalo, New York petitioned for an election to be conducted by the National Labor Relations Board ("NLRB") to determine whether they should be represented by a union. The Company exercised its right to communicate with its employees on the subject of unions and did so through its management team, *i.e.*, officers and supervisors, including some who traveled to Buffalo from around the country. (Declaration of Darryl Uffelmann ("Uffelmann Decl.", at ¶ 3)).

Petitioner Julie Su is the Acting Secretary of Labor. OLMS is an agency within the DOL charged with enforcement of the reporting requirements of the LMRDA. In August 2022, Chad Markham, an OLMS Supervisory Investigator ("Investigator Markham"), contacted the Company and informed Starbucks that OLMS was conducting an investigation into whether certain payments made by the Company to its management team during the union organizing campaign should have been reported under § 203(a) of the LMRDA. (Uffelmann Decl., at ¶ 2). Investigator Markham specifically referenced bonuses and travel expenses allegedly paid to officials and supervisors from outside Buffalo who lawfully visited or transferred to Buffalo during the election campaign and thereafter communicated with employees regarding the union. (Uffelmann Decl., at ¶ 3).

An Administrative Law Judge of the NLRB, an independent government agency, subsequently found Starbucks officials and supervisors who transferred or visited Buffalo committed certain unfair labor practices during the union organizing campaign. *See* March 2023 ALJ Decision, attached as Ex. 3 to the petition to enforce the Subpoena. Starbucks has filed voluminous exceptions to the ALJ decision,[1] and that decision has no force or effect until the NLRB rules on the exceptions.[2]

---

[1] Starbucks Corporation | National Labor Relations Board (nlrb.gov) Starbucks Corporation | National Labor Relations Board (nlrb.gov)
[2] Administrative Law Judge Decisions | National Labor Relations Board (nlrb.gov).

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 3
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1    Any such ruling by the NLRB likewise has no force or effect until a court enforces the decision.[3]

2    **B.    Relevant LMRDA Provisions and the Longstanding Enforcement Policy of
3    OLMS With Regard to Payments Made to Officers and Employees Under
     Section 203(a).**

4        Section 203(a)(2) of the LMRDA requires employers to file reports with the DOL for any

5    fiscal year in which they make payments to certain employees for the purpose of causing such

6    employees to persuade other employees as to their right to organize and bargain collectively. *See* 29

7    U.S.C. § 433(a)(2).  Section 203(a)(3) of the Act requires such reports for any fiscal year where the

8    employer has made payments with the object of interfering with, restraining, or coercing employees

9    in the exercise of their right to organize and bargaining. *Id*. at § 433(a)(3). But since the inception

10   of the Act, the foregoing reporting provisions have been limited by § 203(e) of the LMRDA (29

11   U.S.C. § 433(e)), as follows:

12           Nothing in this Section shall be construed to require any regular officer,
13           supervisor, or employee of an employer to file a report in connection with
             services rendered to such employer nor shall any employer be required to
14           file a report covering expenditures made to any regular officer, supervisor,
             or employee of an employer as compensation for service as a regular
15           officer, supervisor, or employee of such employer.

16   *See also* 105 Cong. Rec. 19,761 (1959) (statement of Sen. Goldwater) ("Employers are not required

17   to file any report concerning expenditures in the form of compensation for the services of any of

18   their regular supervisors, or employees.").[4]

19       Pursuant to the foregoing provisions, for many decades, OLMS has neither investigated nor

20   required employers to file reports disclosing payments by the employer to its officers, managers, or

21   supervisors for services rendered by them in connection with either §§ 203(a)(2) or (a)(3) of the

22   LMRDA. In a post on the "Department of Labor Blog," dated Jan. 5, 2022, OLMS Director Jeffrey

23   Freund conceded as much when he stated:

24   _____

     [3] 29 U.S.C. § 160 (e), (f.
25   [4] *See* S. Rep. No. 187, at 40 (*reprinted in* 1 National Labor Relations Board, *Legislative History of the*
26   *Labor-Management Reporting and Disclosure Act* 436, 1959 U.S. Code Cong. & Admin. News 2318,
     2357

Littler Mendelson, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

"[D]espite there being literally thousands of cases in which the NLRB found an employer to have violated the NLRA, our electronic records don't contain a single report from a single employer disclosing such an expenditure. Electronic records go back only so far, but no one here can remember a paper report disclosing such an expenditure. If it ever happened, it's lost in the mists of time.[5]

A more recent Freedom of Information Request confirms Director Freund's blog post: OLMS has indicated that there are no records of any previous investigation or reporting requirement compelling employers to disclose payments to their own officers, supervisors or employees, regardless of whether such individuals were alleged to have committed unfair labor practices or any other acts covered by Section 203(a). (Uffelmann Decl., Resp. Ex. 1, ¶ 7).

In accordance with the foregoing OLMS policy, on which Starbucks properly relied, the Company's understanding is that it engaged in no conduct during the Buffalo organizing campaign that has previously been held by OLMS to require reports to be filed under the LMRDA, or investigated as such. Accordingly, upon receiving the initial request for documents from OLMS Investigator Markham, the Company's representative asked the Investigator for an explanation of the purpose of the agency's unprecedented investigation. (*See* Uffelmann Decl., Resp. Ex. 1, ¶ 4-5). Investigator Markham indicated that the investigation was part of a "new enforcement policy," under which certain types of payments by the Company to its managers and supervisors could be deemed by OLMS to be reportable. (*See* Uffelmann Decl., Resp. Ex. 1, ¶ 4). Under the new policy, OLMS for the first time has asserted that such reportable payments could include travel expenses, per diems, and bonuses paid to management employees who traveled to a region in order to participate in persuader or unfair labor practice activity in response to union organizing campaigns. (*See* Uffelmann Decl., Resp. Ex. 1, ¶ 8).

Investigator Markham declined to provide any document evidencing a public announcement of changes in OLMS's longstanding reporting policy and provided no explanation or justification

---

[5] Putting 'Management' Back Into the Labor-Management Reporting and Disclosure Act | U.S. Department of Labor Blog (dol.gov).

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1   for the unannounced change. (*See* Uffelmann Decl., at ¶ 4-8). Indeed, to this day, OLMS has not

2   publicly explained or justified any change in its reporting enforcement policy relevant to the

3   documents requested in this proceeding. Though fully aware of Starbucks contentions in this regard,

4   the Petition fails to dispute that OLMS is seeking to enforce an unexplained and unjustified change

5   in longstanding agency policy and must therefore be deemed to have conceded this fact.

6           **C.      Documents Sought by the OLMS Subpoena.**

7           On March 8, 2023, OLMS served upon Starbucks the Subpoena, attached to the OLMS

8   Petition for Enforcement as Exhibit 1, which contains the following demands for documents:

9           First, the Subpoena seeks, *inter alia*, job descriptions for nine classifications of Company

10  management team members who travelled to Buffalo during FY 2021 and 2022, along with job

11  descriptions for any Starbucks employees who non-routinely travelled to Buffalo during the same

12  period. (Pet. Ex. 1, at ¶ 1-2).

13          The Subpoena further demands records relating to bonuses paid to any Starbucks employees

14  who travelled to Buffalo during the same stated period, along with travel expense records of all

15  employees who traveled to Buffalo during the same period. *Id.* at ¶ 3.

16          The Subpoena further seeks travel expense records and travel agendas for any Starbucks

17  officials or employees who travelled to Buffalo, NY in 2021-2022, including Company founder and

18  Chair Emeritus Howard Schultz. *Id.* at ¶ 4.[6]

19          OLMS' Subpoena also seeks records relating to all expenditures the Company made to

20  support the creation and/or maintenance of the website https://one.starbucks.com/ during FY2021

21  and 2022. *Id.* at ¶ 5.

22          Finally, the Subpoena calls for production of "records relating to meetings conducted and/or

23  attended by any Starbucks employee who travelled to any Starbucks retail location within the

24  _____

25  [6] Investigator Markham's affidavit (Resp. Ex. 1-7, ¶11) asserts that Schultz was not an officer of the Company when
    he visited Buffalo and spoke to employees, based upon a Company filing with the SEC. But that same filing states
26  that Schultz was recognized by the Company as its "founder and Chair Emeritus" and Schultz acted in that capacity
    prior to returning to the office of Interim CEO in 2022.

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 6
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

Buffalo, NY area wherein union organizing campaigns were taking place during FY 2021 and 2022….” *Id.* at ¶ 6.

The foregoing records demanded by OLMS in the Subpoena collectively seek disclosure of compensation paid by the Company to its own regular officers, supervisors, or employees in connection with services rendered to the Company and/or expenditures made to any regular officer, supervisor, or employee of an employer as compensation for service as a regular officer, supervisor, or employee of the Company. As set forth above, all such expenditures are exempt from disclosure under § 203(e) of the LMRDA. Even more significantly, as noted above, the records sought by the Subpoena evidence a sea change in OLMS enforcement policy, applied retroactively without explanation or justification for the change and without public notice and comment in violation of the APA.

The parties conferred regarding possible resolution of the dispute, during which time the date for compliance with the Subpoena was extended. Once impasse was reached in the conferral process, Starbucks filed an administrative petition to revoke the subpoena, objecting that the Subpoena retroactively violated the APA, LMRDA, and First Amendment. OLMS failed to respond to Starbucks' petition to revoke the Subpoena, and instead proceeded to file its petition for enforcement of the Subpoena in this Court.

While the parties negotiated over compliance with the Subpoena, a change in leadership of the Department of Labor took place. Former Secretary Walsh resigned, and Deputy Secretary Julie Su was named Acting Secretary.[7] Su was then nominated to become Secretary of Labor, but she has not been confirmed by the Senate, calling into question her authority to serve in an acting capacity.[8]

### III.    LEGAL STANDARD

Administrative subpoenas are enforceable only if a court determines that a four-part test has been satisfied: (1) the subpoena was issued pursuant to lawful authority, (2) the subpoena was issued

---

[7] Office of the Secretary | U.S. Department of Labor (dol.gov).
[8] Key GOP Senator Warns Su's Acting Status Undermines DOL Work (bloomberglaw.com)

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 7
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

for a lawful purpose, (3) the subpoena requests information which is relevant to the lawful purpose, and (4) the disclosure sought is not unreasonable. *See Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. at 208-09; *see also United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950); *United States v. Powell*, 379 U.S. 48 (1964). The Ninth Circuit has applied similar, overlapping tests for enforcement, which require that a government subpoena be authorized by statute; that all procedural requirements have been met; and that the evidence sought is relevant and material to the investigation. *See Peters v. United States*, 853 F.2d 692, 699 (9th Cir. 1988) (noting that administrative subpoenas are unenforceable when they lack statutory authorization and when they are "so broad as to be in the nature of a 'fishing expedition'"); *see also EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 1983) (quashing subpoena issued without statutory authority). As further explained below, the OLMS Subpoena fails each of these tests and should therefore be quashed and denied enforcement.

As an additional ground for denying enforcement, Petitioner Julie Su, the current Acting Secretary of Labor, appears to lack constitutional authority to hold her position without confirmation by the U.S. Senate. *See NLRB v. SW General Hospital*, 580 U.S. 288 (2017) (Thomas, J., concurring) (doubting the constitutionality of allowing a person who has been nominated for a vacant office requiring Senate confirmation to perform the duties of that office in an acting capacity). Absent Senate confirmation, the Acting Secretary lacks constitutional authority to petition for enforcement of the Department's Subpoena, as further discussed below.

## IV.    ARGUMENT

### A.  THE SUBPOENA SHOULD BE QUASHED BECAUSE IT DEPARTS UNLAWFULLY FROM OLMS'S LONGSTANDING ENFORCEMENT POLICY AND IS THEREFORE ARBITRARY AND CAPRICIOUS IN VIOLATION OF THE APA.

At the outset, the Subpoena was not "issued pursuant to lawful authority" and was not "authorized by law," as required by the Supreme Court and Ninth Circuit authority referenced above. Under the APA, it is well settled that an agency making a change in longstanding enforcement policy

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1    must provide a reasoned explanation for the change, must display awareness that it is changing

2    position, and must show there are good reasons for the new policy. *See Motor Vehicle Mfrs. Ass'n*

3    *of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1986). Agency action that violates

4    these standards will be found to be unlawfully arbitrary and capricious. *Id.*; *see also FCC v. Fox TV*

5    *Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not, . . . depart from a prior policy *sub*

6    *silentio* or simply disregard rules that are still on the books."); *Dep't of Homeland Sec. v. Regents of*

7    *the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020).

8          In addition, agency reversals of policy will be found unlawful if the agency has "relied on

9    factors which Congress has not intended it to consider, entirely failed to consider an important aspect

10    of the problem, offered an explanation for its decision that runs counter to the evidence before the

11    agency, or is so implausible that it could not be ascribed to a difference in view or the product of

12    agency expertise." *Id.* The agency must also show it has considered the regulated community's

13    longstanding reliance interests prior to reversing enforcement policies. *Encino Motorcars, LLC*, 579

14    U.S. 211, 222 (2016); *see also Faith Int'l Adoptions v. Pompeo*, 345 F. Supp. 3d 1314, 1328 (W.D.

15    WA 2018). The Supreme Court has made clear that the DOL is not entitled to *Chevron* deference

16    where it fails adequately to explain inconsistent reversals of longstanding policies. *See Coalition for*

17    *Workforce Innovation v. Walsh*, No. 1:21-CV-130, 2022 U.S. Dist. LEXIS 68401 (E.D. Tex. Mar.

18    14, 2022); *see also Peters*, 853 F.2d at 700 (observing in the administrative subpoena context that

19    an agency's interpretation of a statute it administers "is entitled to less weight when it represents an

20    abrupt change from longstanding practice").

21          Here, the OLMS has failed all of the foregoing tests for arbitrary and capricious action in

22    plain violation of the APA, and the Subpoena must be denied enforcement for this reason alone. As

23    noted above, for many decades OLMS policy has recognized that LMRDA § 203(a) does not require

24    reporting of any compensation paid by an employer to itself as the employer, or to regular officers,

25    supervisors and other employees for their services, which Congress expressly exempted from

26    disclosure pursuant to § 203(e) of the Act. *See* 29 U.S.C. § 433(e); *see also* 105 CONG. REC. 19,761

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 9
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1    (1959) (statement of Sen. Goldwater) ("Employers are not required to file any report concerning

2    expenditures in the form of compensation for the services of any of their regular supervisors, or

3    employees.").

4          In *Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am., et al. v. Dole*,

5    869 F.2d. 616 (D.C. Cir. 1989), the D.C. Circuit rejected an attempt by a labor organization

6    beginning in 1982 to force the DOL to require reporting of "split payments" to supervisors for the

7    purpose of persuading employees. For years prior to that date, and certainly since the court's ruling,

8    OLMS has rejected as "impracticable" any attempt to require employers to disclose and report

9    payments to officials, supervisors, and/or employees, pursuant to Section 203(e). The agency has

10   advanced no basis for changing its policy now, and the agency has certainly not complied with the

11   APA in making the abrupt change in policy evidenced by the current Subpoena.

12         As further noted above, OLMS Director Freund conceded in his 2022 blog post that there

13   was no record within the agency of any employer filing reports based on payments to their own

14   employees for activities found to be unfair labor practices under Section 203(a)(3).[9] Finally, in

15   response to a FOIA request, OLMS has failed to identify a single instance in which employer reports

16   have been compelled under the statutory provisions at issue here, nor has OLMS identified any prior

17   investigation seeking such reports. (Uffelmann Declaration ¶ 3); *see also Peters*, 853 F.2d at 700

18   (quashing administrative subpoena where Ninth Circuit could "find no reported decision" where

19   agency had previously issued a similar administrative subpoena).[10]

20         To date, OLMS has yet to provide Starbucks with *any* reasoning for reversing its decades-

21   old policy permitting employers to compensate their own staff to engage in conduct otherwise

22   covered by Section 203(a) and 203(e). The OLMS Petition to this Court does not even acknowledge

23

24   [9] Putting 'Management' Back Into the Labor-Management Reporting and Disclosure Act | U.S.
     Department of Labor Blog (dol.gov).

25   [10] OLMS has likewise identified no previous instance in which it has subpoenaed information about the internal
     operations of a Company-owned website, identified as such, by which the Respondent communicates with its own

26   employees.

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 10
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1  the agency's change in policy and certainly does not provide any explanation for it, in direct violation

2  of Supreme Court authority.[11]

3       Rather than acknowledge or comply with the APA, the Memorandum in support of the

4  Petition relies on inapposite cases enforcing EEOC petitions involving "fact-based claims." None of

5  the cases cited by the Petitioner involved reversals of decades of agency policy in direct violation of

6  the APA. (OLMS Mem. p. 5, citing *EEOC v. Fed. Exp. Corp.*, 558 F. 3d 842, 854 (9th Cir. 2009).

7  And in one of the cases cited by OLMS, *EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071, 1076

8  (9th Cir. 2001), the Ninth Circuit denied enforcement of the subpoena because the ADEA did not

9  apply to the subpoenaed employer's employment relationship to the employee at issue. The Petition

10  also fails to address the *Peters* case, cited above, in which the Ninth Circuit quashed an

11  administrative subpoena lacking statutory authorization, after finding no reported cases in which a

12  similar subpoena had been issued by the agency seeking enforcement. 853 F.2d at 700.

13       In the present case, as in *Karuk* and *Peters*, the question of enforcement is strictly a legal

14  one, *i.e.*, whether the OLMS Subpoena can be enforced as a matter of law, and/or whether the agency

15  has jurisdiction to pursue an investigation reversing decades of enforcement policy violating the

16  APA's requirements. Put another way, even if any or all of the facts contained in the OLMS exhibits

17  attached to the OLMS Memorandum (at p. 3-4) were true – which Starbucks does not concede - no

18  LMRDA investigation would be authorized under the APA due to the Department's improper

19  reversal of previous enforcement policy.

20       For this reason as well, the Petitioner's attachment of the ALJ Decision in the Buffalo unfair

21  labor practice case is irrelevant to the present Petition. Petition Ex. 3. As noted above, Starbucks has

22  filed voluminous, publicly available exceptions to the ALJ decision, and that decision has no force

23  or effect until the NLRB rules on the exceptions. Any such ruling by the NLRB likewise has no

24  force or effect until a court enforces the decision. But even if there were any definitive findings of

25

26  [11] *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc.,* 463 U.S. at 43 (1986); *Fox TV Stations, Inc.*, 556 U.S. at 515.

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 11
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1  unfair labor practices committed by the Company under the NLRA, that would give OLMS no right

2  to enforcement of the present Subpoena under the LMRDA, because the OLMS investigation

3  contradicts the agency's longstanding policy not to require reports of compensation to officers and

4  employees alleged to have committed such unfair labor practices.  For the same reasons, Investigator

5  Markham's affidavit claims of relevance as to the documents sought by the Subpoena are mistaken

6  (Resp. Ex. 1-7, pp. 6-8), because none of the documents are relevant to any *lawful* statutory purpose.

7  Because the Subpoena so plainly violates the APA, the petition for enforcement must be

8  quashed under each of the tests spelled out by the Ninth Circuit and by the Supreme Court in *Walling*,

9  327 U.S. at 208-09:  (1) the subpoena was not issued pursuant to lawful authority (or was not

10  "statutorily authorized"), but was instead issued in contravention of the APA and the LMRDA; (2)

11  the subpoena was not issued for a lawful purpose, but for an unlawful one; (3) the subpoena does

12  not request information which is relevant to a lawful purpose, because the enforcement policy

13  underlying the Subpoena is itself unlawful; and (4) the disclosure sought is unreasonable, because it

14  compels disclosures that longstanding OLMS policy has declared to be exempt from disclosure. *Id.*

15  at 208-09. Therefore, for all of these reasons, OLMS's Subpoena should not be enforced and a

16  protective order should be issued.

17
18
  **B.  THE SUBPOENA SHOULD ALSO BE QUASHED BECAUSE OLMS'S NEW ENFORCEMENT POLICY WAS ADOPTED WITHOUT NOTICE AND COMMENT RULEMAKING REQUIRED BY THE APA.**

19  The APA requires agencies to engage in public notice and comment rulemaking, absent

20  limited exceptions, prior to changing policies that have the force of law. *Coalition for Workforce*

21  *Innovation*, 2022 U.S. Dist. LEXIS 68401 (E.D. Tex. Mar. 14, 2022) (striking down DOL reversal

22  of policy due to inadequate notice and comment). The purposes of the notice-and-comment

23  requirement are "(1) to ensure that agency regulations are tested via exposure to diverse public

24  comment, (2) to ensure fairness to affected parties, and (3) to give affected parties an opportunity

25  to develop evidence in the record to support their objections to the rule and thereby enhance the

26

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 12
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1    quality of judicial review." *Id.* (quoting *Int'l Union, United Mine Workers of Am. v. Mine Safety*

2    *& Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005)); *see also Faith Int'l Adoptions v.*

3    *Pompeo*, 345 F. Supp. 3d at 1328 (finding change in enforcement policy was "not a mere

4    clarification" and therefore required notice and comment prior to implementation).

5            The Supreme Court has broadly defined rulemaking to include "statement[s] of general or

6    particular applicability and future effect" that are designed to "implement, interpret, or

7    prescribe law or policy." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95 (2015) (quoting 5

8    U.S.C. § 551(4) and (5)). Legislative rules affect existing individual rights and obligations and have

9    the "force and effect of law." *Mortg. Bankers Ass'n*, 575 U.S. at 96 (citing *Chrysler Corp.*, 441 U.S.

10   at 302-3).

11           In the present case, the enforceability of OLMS's Subpoena depends upon the legality of the

12   agency's change in its enforcement policy under the LMRDA, having the force and effect of law.

13   By not seeking public notice or comment on this new policy, in which OLMS asserts that employer

14   payments to members of corporate management are reportable for any reason under the LMRDA,

15   OLMS has exceeded the bounds of the LMRDA and the APA.

16           On a previous occasion when the OLMS sought to change its enforcement policy with regard

17   to §§ 203(a), (b), and (c) of the LMRDA, dealing specifically with the scope of the persuader

18   "advice" exemption in § 203(c), the agency conducted rigorous public notice and comment before

19   making the change. *Interpretation of the Advice Exemption in Section 203(c) of the Labor-*

20   *Management Reporting and Disclosure Act*, 81 FED. REG. 15,923 (Mar. 24, 2016). The rulemaking

21   was ultimately found to violate the LMRDA and the APA for reasons analogous to the additional

22   grounds discussed here. *See Nat'l Fed'n Of Indep. Bus.*, 2016 U.S. Dist. LEXIS 89694 (W.D. Tex.

23   2016).[12]

24   ───────────────
     [12] The nationwide injunction issued by the federal court in *Nat'l Fed'n of Indep. Bus.* against compelling disclosure
25   of advice received in connection with communications with employees forecloses enforcement of the OLMS
     Subpoena insofar as it compels disclosure of payments made to employees or consultants who assist the Company in
26   maintaining its website, under Section 203(c) of the Act.

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 13
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1   The fact that OLMS found it necessary to conduct notice and comment rulemaking before

2   changing its enforcement policy in 2016 argues strongly against the agency's attempt to change its

3   longstanding enforcement policy here without notice and comment. Again, for these reasons, the

4   Subpoena fails the *Walling* test for enforcement because it seeks to enforce an unlawfully

5   implemented new policy in violation of the APA.

6   ### C.     THE SUBPOENA SHOULD BE QUASHED BECAUSE IT SEEKS TO COMPEL SPEECH IN VIOLATION OF THE FIRST AMENDMENT.

7   It is well settled that the First Amendment prohibits restrictions on "both the right to speak

8   freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705 (1977). Courts

9   have held that strict scrutiny applies when the government seeks to compel disclosures pertaining to

10   "controversial" speech, whether political or commercial in nature. *See Nat'l Ass'n of Mfrs. v. SEC*,

11   748 F.3d 359, 371-375 (D.C. Cir. 2015) (enjoining requirement that companies disclose use of

12   "conflict minerals"); *see also Associated Builders & Contractors of SE Texas v. Rung*, No. 1:16-

13   CV-425, 2016 U.S. Dist. LEXIS 155232 (E.D. Tex. Oct. 24, 2016) (enjoining DOL requirement that

14   government contractors file reports disclosing past labor law violations).

15   Unauthorized expansion of the LMRDA's reporting requirements by OLMS, *i.e.*, compelling

16   financial disclosures relating to employer responses to union organizing beyond the limits of the

17   express exemptions in the Act, has been specifically held to violate the First Amendment. *See Nat'l*

18   *Fed'n Of Indep. Bus. v. Perez*, No. 5:16-cv-00066-C, 2016 U.S. Dist. LEXIS 89694 (N.D. Tex. June

19   27, 2016). In that case, OLMS issued a rule after public notice and comment to announce a changed

20   application of the LMRDA's "advice" exemption from the reporting requirements applicable to

21   persuaders in § 203(c) of the LMRDA, 29 U.S.C. § 433(c). The District Court found the rule change

22   violated the First Amendment right of employers to express opinions regarding union organizing,

23   and that the Labor Department's new rule was content-based in imposing burdens not supported by

24   a compelling interest, in the absence of clear statutory language supporting the expanded reporting

25   requirements. *Id*. at *87-98.

26

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 14
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

Here, the case against the Subpoena's content-based compelled disclosures is even stronger because OLMS has engaged in no notice and comment public rulemaking and has not even publicly acknowledged its significant change in policy before demanding disclosure of documents from Starbucks. And because the Subpoena seeks to compel documents in violation of the First Amendment, the investigation is not for a lawfully authorized purpose, the Subpoena's authority at issue is not within the power of Congress to command, and the documents sought are neither relevant to a permissible inquiry, nor otherwise reasonable.

Further, OLMS's Subpoena should be revoked because it interferes with § 8(c) of the NLRA, which squarely provides Starbucks with the right to freely communicate with its employees. *See* 29 U.S.C. § 158(c) ("The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act [subchapter], if such expression contains no threat of reprisal or force or promise of benefit."). By requiring production of the records requested in the Subpoena, OLMS is seeking to discourage Starbucks' lawful means of communicating with its employees.

### D. THE SUBPOENA SHOULD BE QUASHED BECAUSE IT SEEKS RECORDS THAT ARE PROTECTED FROM DISCLOSURE BY § 203(e) OF THE LMRDA.

As previously set forth, § 203(e) of the LMRDA exempts any regular officer, supervisor, or employee of an employer from reporting their services, and further protects from disclosure any employer report covering expenditures made to any regular officer, supervisor, or employee of an employer as compensation for service as such.  29 U.S.C. § 433(e).

There is no dispute that the positions for which the OLMS Subpoena seeks information are officers, managerial and/or supervisory positions within the Company. Nor is there any dispute that the payroll records sought include monies paid to officers, managers and supervisors "as compensation for a service," namely, performing the management jobs they were hired to fulfill.

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 15
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

These individuals are exempt from reporting in connection with services (of any kind) rendered to their employer, including payments of any company expenditures to them in compensation of such services. Regardless of whether such expenditures take the form of reimbursements of employee expenses, bonuses, or other forms of compensation, such payroll records and all records involving expenditures to officers, supervisors, or employees as compensation for a management service are explicitly carved out from disclosure under the LMRDA. *See also Peters*, 853 F.2d at 700 (quashing subpoena where applicable statutory language did not authorize it).

Because this language is plain on its face, OLMS is entitled to no deference under the familiar standards for review of agency action set forth in *Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984). *See City of Arlington v. FCC*, 133 S. Ct. 1863 (2013). To the extent there is any ambiguity in the LMRDA, OLMS is further prevented from enforcing the subpoena by the Supreme Court's "major questions doctrine." *See West Virginia v. EPA*, 590 U.S. __, 142 S. Ct. 2587 (2022) (holding that statutes must not be interpreted as delegating power to decide major questions unless the text clearly grants such power.); *accord Biden v. Nebraska*, 600 U.S. __, 143 S. Ct. 2355 (June 30, 2023).

Moreover, as the Supreme Court held in *NLRB v. Bell Aerospace v. NLRB*, 416 U.S. 267, 274-75 (1974): "[A] court may accord great weight to the longstanding interpretation placed on a statute by an agency charged with its administration. This is especially so where Congress has re-enacted the statute without pertinent change. In these circumstances, congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." As it applies to the LMRDA, Congress has amended the Act on several occasions—1965, 1984, 1985, and 1987. Over the years, it has decided *not* to alter the DOL's longstanding enforcement policies under the LMRDA, described above, which exclude employers from compelled production of the very documents that are sought by the Subpoena at issue in this matter. *See* 29 U.S.C. § 433(e); *see also* 105 Cong. Rec. 19,761 (1959) (statement of Sen. Goldwater). Instead, Congress has left § 203(e) intact. Congress has not reversed course, it has not limited the

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 16 CASE NO. 2:23-MC-00045- MJP

Littler Mendelson, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1   scope of what reports employers may withhold, and most importantly, it has not given OLMS free

2   reign to devise new enforcement applications of plain and unambiguous statutory language.

3       It must also be observed that the individuals the Subpoena seeks to obtain records on are

4   themselves "employers," as defined by the LMRDA. *See* 29 U.S.C. § 402 ("Employer" includes

5   "any person acting directly or indirectly as an employer or as an agent of an employer in relation to

6   an employee . . . ."). Thus, on its face, the Subpoena must be quashed because it seeks

7   compensation/expenditure-related documents as to payments by an employer to itself. Not only does

8   this interpretation defy the plain language of the LMRDA, but OLMS has stated both during the

9   investigation and in response to a FOIA request that, for decades, until just recently, it has *never*

10   applied the LMRDA to impose any such reporting requirement under §§ 203(a)(2) or (3) of the Act.

11   (*See* Uffelmann Decl., Resp. Ex. 1).

12       However, even assuming that the job positions identified in the Subpoena are not held by

13   "employers," but are instead "employees," the Act still prohibits disclosure of documents involving

14   compensation between an employer—Starbucks—and an employee for the purpose of compensation

15   for service in connection with their job duties. The plain language of § 203(e) of the Act

16   unambiguously states, "nor shall any employer be required" to file such disclosures/reports. It is thus

17   clear from the plain language of § 203(e) of the Act that Congress sought to create a carveout in

18   certain circumstances (in this case, when an employer makes payments to officers and supervisors

19   "as a compensation for a service . . . .").

20       Ultimately, whether these individuals were traveling the country to communicate messages

21   that OLMS or the DOL as a whole agree with is simply not relevant. Nowhere does the Act authorize

22   OLMS to subpoena information of the type demanded here, for the purpose of enforcing a reporting

23   policy that is contrary to the plain language of the LMRDA. Lastly, the Subpoena should be revoked

24   because expenditures related to the creation and/or maintenance of a Company website is beyond

25   the purview of what is contemplated in the aforementioned section of the LMRDA. Maintenance of

26   and/or creation of a company website is again exempt under § 203(e) if performed by employees, or

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 17
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

Section 203(c) if performed by outside consultants, so long as the Company retains final control over the contents of the website and any message communicated thereby. *See Nat'l Fedn. Of Indep. Bus. v. Perez*, 2016 U.S. Dist. LEXIS 89694 (N.D. Tex. 2016).[13]

### E.   THE OLMS SUBPOENA CONSTITUTES A RETROACTIVE CHANGE IN POLICY, SEEKING DISCLOSURES FOR ACTS OCCURING IN THE PREVIOUSLY CLOSED FISCAL YEARS 2021 AND 2022.

The Subpoena must also be quashed because it seeks records from Starbucks' 2021 and 2022 fiscal years, which ended *prior* to issuance of the Subpoena, thereby reflecting an unlawful *retroactive* change in longstanding OLMS policy.

It is well established that agency regulations may not be applied to conduct that took place before their enactment in the absence of clear congressional intent. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994); *see also Rock of Ages Corp. v. Sec'y of Labor*, 170 F. 3d 148, 158 (2d Cir. 1999). As the Supreme court in *USI Film Prods.* stated, "The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." 511 U.S. at 270. In making this determination, courts are guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id.*; *see generally United States v. Gutierrez*, 443 F. App'x 898 (5th Cir. 2011).

Further, "[n]ew regulations, even those that are procedural, have an impermissible retroactive effect where their application 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Gutierrez*, 443 F. App'x at 905-06 (quoting *Handley v. Chapman,* 587 F.3d 273, 283 (5th Cir. 2009)) (internal quotation marks and citation omitted).

Here, the application of OLMS's new (and legally baseless) interpretation of § 203(e) of the

---

[13] The Subpoena should also be quashed to the extent that it seeks documents that are protected by attorney-client privilege. Because Starbucks has moved to quash the Subpoena in its entirety, it is premature to present a log of privileged documents until after the motion is ruled on, but the Company reserves the right to withhold privileged communications subject to presenting an appropriate log at the appropriate time.

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 18
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

LMRDA would, if retroactively applied, substantially increase Starbucks' liability for potential violations of reporting requirements under the LMRDA. Similarly, under the agency's retroactive new policy, Starbucks could now be under a duty to file various financial reports with the OLMS for disbursements of monies that were made in some cases more than 18 months prior to the Subpoena's issuance. There is simply no legal basis for retroactive application of the OLMS's new interpretation of § 203(e) of the LMRDA for purposes of conducting an investigation of conduct that was entirely excluded from any reporting requirement at the time when it took place. Therefore, if the Subpoena is entitled to enforcement at all, which it should not be, then at a minimum the Subpoena and any OLMS investigation should be restricted to conduct occurring after March 2023, when the subpoena was issued.

### F.    NONE OF THE INFORMATION SOUGHT BY THE SUBPOENA IS RELEVANT TO ANY LAWFUL PURPOSE

As noted above, Investigator Markham's affidavit (Resp. Ex. 1-7, pp. 6-8) asserts that the information requested is relevant to the investigation, but in no instance does the Investigator's affidavit establish relevance to a *lawful statutory purpose*, as is required by the legal standard applied in the Supreme Court and this Circuit. *See Walling* 327 U.S. 186*; Peters,* 853 F.2d at 700, and other cases previously cited. Even if all of the documents sought established the facts claimed in the investigator's affidavit (and in the ALJ decision), – which Starbucks does not in any way concede - there would be no basis for imposing any reporting requirement upon the Respondent, because of the agency's unlawful change in its enforcement policies under the APA, its violations of the LMRDA and the First Amendment, and its retroactive application of the new policies. Because the Subpoena has no lawful purpose, as set forth above, none of the information it seeks is relevant to any lawful investigation, as required by Supreme Court and Ninth Circuit authority. The Subpoena should be quashed on this additional ground.

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 19 CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

**G.    THE COURT SHOULD ISSUE A PROTECTIVE ORDER TO PREVENT OLMS FROM FURTHER ABUSING ITS INVESTIGATORY POWERS IN VIOLATION OF THE APA, LMRDA, AND THE FIRST AMENDMENT.**

Because the OLMS investigation violates the APA, LMRDA, and the First Amendment, not only should the Subpoena be quashed, but the Court should also issue an order protecting Starbucks from any continuing investigation by the agency that seeks to enforce new and unlawful policies. If OLMS seeks to change its policies, then it must first engage in notice and comment rulemaking under the APA and must justify its policy reversals in the manner required by the APA. Any such enforcement policies must also comply with the LMRDA, as interpreted under the major case doctrine of the Supreme Court, and the First Amendment, must only be applied prospectively, and must also respect attorney-client privileged communications.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Starbucks respectfully requests the Court deny enforcement of the OLMS Subpoena and quash the Subpoena in its entirety and issue a protective order against any similarly unlawful investigatory demands violating the APA, LMRDA, or First Amendment.

//
//
//
//
//
//
//
//
//
//
//

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 20
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1   Dated: July 31, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

I certify that this memorandum contains 6,844 words, in compliance with the Local Civil Rules as extended by the Court's order.


*s/Ryan P. Hammond*
Ryan P. Hammond, WSBA #38888
rhammond@littler.com

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
Telephone: (206) 623-3300
Facsimile: (206) 447-6965

Maurice Baskin, *pro hac vice*
Stefan Marculewicz, *pro hac vice*
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 772-2526
mbaskin@littler.com
smarculewicz@littler.com

Attorneys for Respondent

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 21
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1

### CERTIFICATE OF SERVICE

2      I am a resident of the State of Washington. I am over the age of eighteen years and not a

3 party to the within-entitled action. My business address is One Union Square, 600 University

4 Street, Suite 3200, Seattle, Washington 98101.  I hereby certify that on July 31, 2023, I

5 electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system,

6 which will send notification of such filing to the following:

7 **Attorneys for Petitioner**

8 Marc A. Pilotin

9 David Kahn
Tara Stearns, CA #291130

10 Natasha Magness, WSBA #55920
UNITED STATES DEPT. OF LABOR

11 300 Fifth Ave., Suite 1120
Seattle, WA 98104-2397

12 Tel: (206) 533-0940

13 Magness.natasha.a@dol.gov
Stearns.tara.e@dol.gov

14
     I certify under penalty of perjury under the laws of the United States and of the State of

15
Washington that the foregoing is true and correct.

16

17      Dated this 31st day of July, 2023.

18
                                        /s/ Karen Fiumano Yun

19                                      Karen Fiumano Yun
                                        kfiumano@littler.com

20                                      **LITTLER MENDELSON, P.C.**

21 4888-3815-4099.1 / 055187-2420

22

23

24

25

26

RESPONDENT OPPOSITION TO AND MOTION TO QUASH PETITIONER'S
SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER - 22
CASE NO. 2:23-MC-00045- MJP

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300